10635.

CLARENDON COUNTY v. SUMTER COUNTY.

*(108 S. E. 103)*

COUNTIES—GENERAL ASSEMBLY CANNOT PERMIT PORTION OF TERRITORY VOTED TO BE ANNEXED TO ANOTHER TO REMAIN IN COUNTY FROM WHICH TAKEN.—Where, under Civ. Code 1912, §§ 643, 646, 647, the taking certain specified territory from C. County and annexing it to S. County and changing the county lines accordingly was duly petitioned for and submitted to an election, and the result of the election, in favor of such proposition, was duly certified to the authorities, including the General Assembly, but, after the election had been declared, individuals in a certain portion of the affected area procured a survey to be made of a line which would leave them in C. County, the General Assembly had no power, in view of the express limitation in Const. art. 3, § 1, requiring submission to vote of the question of alteration ·of any existing county line, to permit such portion of the territory voted to be annexed to S. County to remain in C. County and to alter accordingly the lines voted for, as for the General Assembly to exempt a certain sub-area, part of the original area, from the result of the proceedings regularly had, would be to alter county lines in a manner not first submitted to vote.

Petition in the original jurisdiction by Clarendon County against Sumter County to determine the proper line between said counties.

*Messrs DuRant & Ellerbe,* for petitioner, cite: *Altera-
tion of County lines:* Art VII, Sec. 7, Const. 1895; Sec
647, et seq. 1 Civ. Code 1912. *Art. VII, Sec. 7 is only a
limitation of power conferred by Art. III,* Sec. 1; 52 S. C.
217; 106 S. C. 71. *Governor has power to allow amend-
ments as to boundary in petition:* 78 S. C. 572. *Same prin-
ciple here as in* 65 S. C. 80. *Question submitted was as to
annexation of an area, political rights only being consid-
ered:* 9 Ann. Cas. 120, (Miss.); 95 S. E. 297, (Ga.).

*Messrs. Lee & Moise, Jennings & Harby* and *Clifton &
Wood,* for respondent, cite: *Legislature had no power to
change lines of portion voted on for annexation:* 54 S. C.
1. *Result of election, properly determined, is binding on
Legislature:* 65 S. C. 85. *Every voter in proposed area
must be given right to vote:* 102 S. C. 258.

June 30, 1921.

The opinion of the Court was delivered by MR. JUSTICE
COTHRAN.

This is a petition in the original jurisdiction of this
Court of exceptional character, the nature of which will be
understood from the following statement:

The record for appeal is singularly barren of dates. At
some time prior to January 1, 1921, a petition was filed
with the Governor of this State, signed by more than one-
third of the qualified electors residing in a certain portion
of Clarendon County adjoining Sumter County, praying
that the county line between these two counties be so changed
as to annex said territory to Sumter County.

Upon the filing of this petition, the Governor, in compli-
ance with Section 647, Vol. 1, Code of Laws A. D. 1912,
appointed commissioners; the commissioners selected sur-
veyors; the surveyors surveyed, located, and marked the
proposed change of line, platted the same, and filed certified
plats with the Secretary of State and the respective Clerks
of Court of the two counties.

The election was then ordered by the Governor in the area proposed to be annexed, upon the question of annexation, which election was held according to law and resulted in a majority of more than two-thirds in favor of the proposition which was submitted. The result was duly certified to the election commissioners of Clarendon County, by them to the Secretary of State, and by him to the General Assembly at its session which convened in January, 1921.

It is conceded that all of the constitutional and statutory requirements up to this point were complied with. No protest or objection was made. The election was fairly and duly held in compliance with the law.

After the election had been declared certain individuals residing in the lower portion of the area procured a survey to be made of a line which would exclude them from said area and leave them in Clarendon County.

At the session of the General Assembly held in January, 1921 (Acts 1921, p. 283), an act was passed annexing to Sumter County the area originally proposed to be annexed, but provided for an exemption from the terms of the Act of a certain sub-area included within the lines of the private survey referred to. This exemption was made, however, subject to the following proviso:

"Provided the Supreme Court holds in a proceeding to be forthwith instituted in said Court by the counties of Sumter and Clarendon, or either of them, any taxpayer thereof, that the General Assembly is empowered in altering existing county lines to do other than to provide for the annexation of the whole of the territory voted to be cut from one county and annexed to another, and if the General Assembly may permit the portion of territory embraced within the survey and shown upon the plat filed with the Secretary of the State to remain in the county from which it was proposed to cut the same. If the Court holds that the General Assembly is without power to do other than provide for the

transfer or reject the whole of the territory voted to be cut from one county and annexed to another, then the whole of the territory embraced within said survey and plat, and first described in this act, shall become and be annexed to the county of Sumter."

The act referred to was followed by a concurrent resolution dated March 5, 1921, by which this Court was requested to hear and determine the issue between the two counties, expressed tersely in this form:

"Has the General Assembly the power to permit a portion of the territory voted to be annexed to the county of Sumter, to remain in the county of Clarendon, and to alter the lines accordingly?"

To the solution of this question we will therefore address ourselves.

While Article 7, § 7, of the Constitution purports to be an express grant to the General Assembly of the power to alter county lines, such grant was unnecessary, as the General Assembly under Article 3, § 1, was fully vested with general legislative power, included in which is the power to alter county lines. That section, however, is an express limitation upon the power, and provides:

"That before any existing county line is altered the question shall first be submitted to the qualified electors of the territory proposed to be taken from one county and given to another."

The "question" to be submitted is the alteration of the existing county line. The question of the alteration of a line cannot be submitted without defining the extent of the alteration. The election is held upon the question of altering the county line as thus defined. The election determines whether or not this particular defined alteration shall be approved, and all parties, including the General Assembly, are bound by the result. Section 643 (by reference in section 646) declares it to be the duty of the General As-

sembly at its next session to effectuate the result of the election. Of course, the General Assembly cannot be compelled to perform its duty, but it certainly is not authorized by the Constitution or any statute to exercise any legislative, judicial, or political power in conflict with the limitations contained in the section under review. To sanction the exemption by it of a certain sub-area, a part of the original area, from the result of the proceedings which have been regularly had, would be necessarily to sanction the alteration of the county line in a manner which had not been "first submitted to the qualified electors of the territory proposed to be taken from one county and given to another." If it had the power to diminish the area upon which the election had been had, it has the power to increase it, a power which we assume would not be claimed or conceded by any one. The majority who prevailed in the election are entitled to the fruits of their victory; they are entitled to the area as it was proposed and voted for, and not in a truncated form. It is impossible to say what would have been the result of an election upon the line as indicated by the exemption of the sub-area. It is conceivable that an election would have been favorable to the original propostion and not to an amended one. Hence it cannot be said that the amended line has the approval of the electors; it certainly can be said that it has not been submitted to them as the Constitution requires.

It follows that the line as fixed in the survey of July 15, 1920, first described in the act of 1921, as per plat made by the surveyors named, and filed, is the county line, and that the proviso of the act purporting to exempt from the operation of this act certain territory therein described is void.

It is so adjudged.